IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SUSAN ENS YAZZIE,<br><br>Plaintiff,<br><br><br>vs.<br><br><br>CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:15CV357DAK<br><br><br>JUDGE DALE A. KIMBALL |

This matter is before the court on Plaintiff's appeal of the Social Security Administration's denial of her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. This court has jurisdiction to review the final decision of the Commissioner of the Social Security Administration under the Social Security Act, 42 U.S.C. § 405(g). On March 30, 2016, the court held oral argument on Plaintiff's appeal. At the hearing, Plaintiff was represented by John J. Borsos, and Defendant was represented by Kathryn C. Bostwick. The court took the matter under advisement. Having fully considered the parties' briefs and arguments, the administrative record, and the law and facts relevant to the appeal, the court enters the following Memorandum Decision and Order affirming the Social Security Administration's decision.

## BACKGROUND

On July 6, 2011, Plaintiff filed a Title II application for disability insurance benefits, and on July 11, 2011, Plaintiff filed a Title XVI application for supplemental security income. Plaintiff alleges disability beginning January 1, 2010, related to anxiety, depression, optic neuritis, and migraine headaches.

At the time of her application for benefits, Plaintiff was 51 years old. She has a ninth grade education and little work history. She married at twenty and her husband supported her, although she did an in-home day care for a period of time. She divorced at the age of 33 and lived off alimony and child support. Plaintiff has three daughters. At the age of 46, Plaintiff remarried but her second husband passed away when she was 51.

Prior to the disability period, Plaintiff saw Sharon L. Sharp, a mental health provider, eleven times between October 2003 and July 2004. Sharp diagnosed Plaintiff with general anxiety and social phobia and indicated that Plaintiff's primary limitation was an incapacitating fear of job search and work. Sharp stated that being in a work setting brought on anxiety attacks and Plaintiff demonstrated minimal response to customary interventions for anxiety.

The earliest assessment of Plaintiff during the disability period is from Russell Resnik, LPCC, at Lighthouse Counseling, who saw Plaintiff for fifteen one-hour sessions from October 14, 2009 to March 25, 2010. He indicated that Plaintiff had Adjustment Disorder with Depressed Mood. On March 22, 2011, Plaintiff was assessed by Mary Everett, MSW, at UNM Health Sciences Center, as having a history of depression and being too tired to accomplish much to help herself.

In connection with her disability claim, Dr. Mary S. Loescher, Ph.D., conducted a

psychological evaluation of Plaintiff in September 2011.  Plaintiff reported "a lifelong history of social anxiety and social phobia which has been resistant to treatment."  But Dr. Loescher stated that "from the history provided it is difficult to distinguish what could be anxiety related from what would be considered a long term dependent lifestyle."  Dr. Loescher opined that "it is possible that many of [Plaintiff's] difficulties are related to poor coping strategies.  She does not have work skills and does not coping skills to manage stress in the work place."  Furthermore, "from a cognitive standpoint she would be able to understand, remember and follow through on simple work instructions."  But "motivational issues and coping style may present severe impairment in a work setting."   Dr. Loescher provided the following diagnostic impressions of Plaintiff: generalized anxiety disorder and social phobia based on previous diagnosis, depressive disorder NOS, R/O bereavement, and R/O personality disorder NOS with dependent features.

During the disability period in question, from approximately July 2012 to July 2013, Plaintiff was also examined at least twice by Dr. Eric Von Burton, M.D., for optic neuritis and possible multiple sclerosis.  Plaintiff had periodic episodes of optic neuritis and headaches, but she retained visual acuity in both eyes.  A subsequent MRI ruled out demyelinating disease associated with the optic neuritis and multiple sclerosis.

In September 2012, Plaintiff saw Edward R. Facovic, M.D., complaining of neck and chest pain.  Plaintiff saw Dr. Facovic again in November 2012, complaining of headaches but she said that they respond well to Tylenol and described the pain as a one out of ten.  Plaintiff reported a history of optic neuritis, but noted no recent visual change.  In a December 2012 follow-up visit, Plaintiff discussed her history of migraine headaches as infrequent.  Dr. Facovic

concluded that she did not have the migraine frequency that would require preventative medication.

During the administrative proceedings, state agency physician Allen Gelinas, M.D., reviewed the record and found "no objective evidence of any severe" medically determinable physical impairment.  State agency physician Scott Walker, M.D., reviewed the record and opined that Plaintiff retained the ability to understand, remember, and carry out simple instructions, make simple decisions, concentrate for two hours at a time, interact adequately with coworkers and supervisors, and respond appropriately to changes in a routine work setting. Psychologist Alan Harris, Ph.D. later reviewed the record and agreed with Dr. Walker.

On June 4, 2013, Plaintiff had a hearing on her disability application in front of an Administrative Law Judge ("ALJ").  Plaintiff testified as did Judith Beard, an impartial vocational expert.  Plaintiff denied any depression, but complained of social anxiety and migraine headaches occurring two to three times per month.  Plaintiff testified that her anxiety is triggered by large groups or feeling uncomfortable when she is out and about.  Plaintiff has not taken medication for her anxiety and has only attended counseling when she had the funds to do so.  She is not currently attending any counseling.  Plaintiff admitted that over-the-counter medication effectively relieves her migraine pain.  During a typical day, Plaintiff stated she prepares meals, does household chores, crochets, and watches television.  Plaintiff testified that she is able to drive, take public transportation, and grocery shop with no difficulty.  Plaintiff stated that her eyes get tired quickly, that she could not read for more than twenty minutes, and that fluorescent lighting and sunlight hurt her eyes.  She testified that she wears dark glasses to help alleviate this pain.  Vocational expert Judith Beard testified that an individual with

Plaintiff's background and limitations could perform the unskilled jobs of cleaner, laundry worker, and hand packager.

After the hearing, on October 16, 2013, the ALJ issued a decision determining that Plaintiff was not disabled under Sections 216(I) and 223(d) of the Social Security Act for purposes of disability benefits and similarly not disabled under Section 1614(a)(3)(A) of the Social Security Act for purposes of supplemental security income.

The Social Security Appeals Council declined to review the ALJ's decision, which made the ALJ's decision the Social Security Commissioner's final decision subject to judicial review. 20 C.F.R. § 422.210.

## LEGAL STANDARD

To be found "disabled" under the Social Security Act, the plaintiff must establish her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. 423(d)(1)(A).  Under the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  20 C.F.R. § 416.920.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  *Id.* § 416.920(b).  At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. *Id.* § 416.920©.  At step three, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet, or be considered medically equal to, the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* §§ 416.920(d).  Before considering step four, the ALJ must determine the claimant's residual functional capacity.  *Id.* §

416.920(e).  An individual's residual functional capacity is her ability to do physical and mental

work activities on a sustained basis despite limitations from her impairments.  At step four, the

ALJ must determine whether the claimant has the residual functional capacity to perform the

requirements of her past relevant work.  *Id.* § 416.920(f).  At the last step, the ALJ must

determine whether the claimant is able to do any other work considering her residual functional

capacity, age, education, and work experience.  *Id.* § 416.920(g).

## ALJ'S DECISION

The ALJ analyzed Plaintiff's claim under the five-step process.  The ALJ determined

that Plaintiff had not been engaged in substantial gainful activity since the alleged date of onset

in January 2010.  Next, the ALJ found that Plaintiff had two severe impairments–anxiety and

depression.

Under Step 3, the ALJ concluded that Plaintiff's combination of mental impairments

were not medically severe because the mental impairments must result in at least two of the

following: marked restriction of activities of daily living; marked difficulties in maintaining

social functioning; marked difficulties in maintaining concentration, persistence, or pace, or

repeated episodes of decompensation.   Under the first criteria, the ALJ outlined Plaintiff's

ability to engage in the activities of daily living, all of which demonstrates little to no restrictions

under the first criteria.  Under the second criteria, the ALJ recognized that in social functioning,

Plaintiff has moderate difficulties.  Plaintiff spends time with her daughter, spends time with

others in person, on the phone, and on the computer.  She does not have problems getting along

with family, friends, and others.  She regularly goes to public places like the grocery store,

library, and the mall.  The ALJ also noted that Plaintiff had no trouble communicating at the

hearing.  However, Plaintiff has expressed to several mental health professionals that she has

anxiety when exposed to crowds or groups of people.  On the third criteria, the ALJ found that

Plaintiff had a mild limitation in "concentration, persistence, and pace."  The ALJ noted that

Plaintiff can concentrate long enough to cook a meal and grocery shop.  Plaintiff also testified

that she starts what she finishes, such as a conversation, chores, reading, or watching a movie.

Plaintiff was also able to remember five digits forward and four digits in reverse.  Under the last

element, the ALJ found that there was no evidence that Plaintiff has experienced any episodes of

decompensation.  Because Plaintiff's mental impairments did not cause at least two marked

limitations, the ALJ found that Plaintiff did not satisfy the criteria.

The ALJ next found Plaintiff's residual functional capacity "allowed her to perform a

full range of work at all exertional levels but with the following nonexertional limitations:

[Plaintiff] can only occasionally use fine visual acuity for near vision. [Plaintiff] can perform

simple, routine tasks. [Plaintiff] cannot interact with the public."  In making that determination,

the ALJ stated that she considered all symptoms and the extent to which these symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence.

Considering Plaintiff's age, education, work experience, and residual functional capacity,

the ALJ found that there are jobs that exist in significant numbers in the national economy that

Plaintiff can perform.  The ALJ relied on the testimony of the vocational expert that Plaintiff

would be able to work as a cleaner/washer, laundry worker, or a hand packer.  Accordingly, the

ALJ found that Plaintiff was not disabled.

## STANDARD OF REVIEW

The court independently determines "whether the ALJ's decision is 'free from legal error

and supported by substantial evidence.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10ᵗʰ Cir. 2006)

(quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10ᵗʰ Cir. 2005)).  Under 42 U.S.C. §

405(g), "[t]he findings of the Commission of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive."  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  It requires more than a

scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052.  Although the court "will 'not

reweigh the evidence or retry the case,'" it "meticulously examine[s] the record as a whole,

including anything that may undercut or detract from the ALJ's findings in order to determine if

the substantiality test has been met." *Id.* (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10ᵗʰ

Cir. 2007)).

## ANALYSIS

Plaintiff appeals the ALJ's decision, arguing that the ALJ erred in failing to find that

Plaintiff's optic neuritis and migraine headaches were severe impairments, the ALJ erred in

failing to accord adequate weight to the opinion of the consultative examiner, the ALJ

improperly evaluated Plaintiff's credibility, the ALJ failed to properly determine Plaintiff's

residual functional capacity, and the ALJ failed to pose a complete hypothetical question to the

vocational expert.

Plaintiff first asserts that the ALJ failed to find her optic neuritis and migraine headaches

were severe impairments at step two of the sequential evaluation.  However, Plaintiff did not

demonstrate that either impairment significantly limited her ability to do basic work activities.

The record has several instances in which Plaintiff states that her headaches could be controlled

with over-the-counter medications.  One medical record indicates that she was once given

sumitriptan, a medication specifically for migraine.  Occasional headaches that respond to medication do not demonstrate a severe impairment.  Similarly, Plaintiff's episodes of optic neuritis have been treated and responded to medication.  Although Plaintiff has some residual scarring, she continues to have normal vision.  There is no evidence that her optic neuritis is a severe impairment.  Moreover, the ALJ addressed the impairments as part of Plaintiff's residual functional capacity and imposed some limitations for use of fine visual acuity.

Plaintiff also argues that the ALJ did not give proper weight to Dr. Loescher's opinion. Dr. Loescher was not a treating physician and her opinions were not entitled to controlling weight.  As an examining physician, the ALJ properly evaluated Dr. Loescher's opinions using the factors set forth in 20 C.F.R. § 404.1527.  An examining physician's opinion is "given particular consideration" and "presumptively entitled to more weight than a doctor's opinion derived from a review of the medical record."  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).  Thus her opinion "may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the . . . regulations."   The ALJ could consider Dr. Loescher's opinion along with all the other medical evidence, including evidence in the record after the date of Dr. Loescher's report.  The ALJ state that Dr. Loescher's opinion was entitled to some weight.  However, to the extent that Dr. Loescher's opinion was inconsistent with the overall medical record, including more recent medical evidence, the ALJ provided specific, legitimate reasons for giving less weight to Dr. Loescher's opinions.

Plaintiff further contends that the ALJ improperly evaluated Plaintiff's credibility. However, the ALJ gave several valid and well-supported reasons for discounting Plaintiff's allegations.  Plaintiff's level of activity was not consistent with her claims of severe impairments.

Plaintiff's failure to seek counseling and medication to treat her impairments also undermined her credibility. The court does not find any of these findings to be lacking in support.

Next, Plaintiff claims that the ALJ failed to properly determine her residual functional capacity. Plaintiff states that the ALJ's assessment appears as a conclusion, with no reasoning and no citation to specific facts. However, Plaintiff's citation is only to the heading of the section. The ALJ's discussion relating the Plaintiff's residual functional capacity consists of four pages of single-spaced text, which explains the reasons for her findings and cites to specific parts of the record. The ALJ compared Plaintiff's symptom testimony and the medical evidence, considered inconsistencies, and detailed how the evidence supported her conclusions. Plaintiff also incorrectly contends that the ALJ's residual functional capacity failed to consider the impact of both severe and non-severe impairments on Plaintiff's ability to work. The ALJ considered all of Plaintiff's impairments. In fact, some of the limitations the ALJ imposed on Plaintiff's ability to work were based on non-severe impairments. At the hearing, Plaintiff challenged whether there should have been a limitation that Plaintiff could not work under fluorescent lighting. However, Plaintiff did not point to any medical evidence in the record supporting such a limitation. While this court may not have analyzed the issue in the same manner as the ALJ, the court finds there is substantial evidence supporting the ALJ's residual functional capacity determination.

Finally, Plaintiff asserts that the ALJ failed to pose a complete hypothetical question to the vocational expert. However, the ALJ's decision states that she asked the vocational expert whether jobs exist in the national economy or an individual with Plaintiff's age, education, work experience, and residual functional capacity. This question reflected all of the functional

limitations that the ALJ found credible enough to include in the residual functional capacity assessment.  Plaintiff's argument regarding the posed hypothetical, therefore, is just another attack on the ALJ's residual functional capacity finding.  The court has already found that the ALJ's residual functional capacity was reasonably analyzed and based on the record as a whole.  Therefore, the hypothetical question posed to the vocation expert, based on the residual functional capacity, was adequate.

After reviewing the administrative record as a whole, the court concludes that Plaintiff does not meet the requirements for being disabled under the Social Security Act and the ALJ's decision should be affirmed.  The court finds no basis for Plaintiff's challenge to the ALJ's decision in this case.  The ALJ's decision is free of legal error and supported by substantial evidence.

## CONCLUSION

Based on the above reasoning, the court AFFIRMS the ALJ's decision in this case. Accordingly, Plaintiff's appeal is DISMISSED.  The Clerk of Court is directed to enter judgment in favor of Defendant and close the case.

DATED this 5th  day of April, 2016.

BY THE COURT:

Dale A. Kimball,
United States District Judge

11